UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. LOSSIA,

      Petitioner,                    CASE NO. 04-80422

  v.                                DISTRICT JUDGE LAWRENCE P. ZATKOFF

UNITED STATES OF AMERICA     MAGISTRATE JUDGE VIRGINIA M. MORGAN

      Respondent.
_____/

**REPORT AND RECOMMENDATION**

    This case comes before the court on petitioner's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (D/E #56). Initially, the motion was referred to Magistrate Judge Stephen Pepe for a Report and Recommendation (D/E #29). Judge Pepe subsequently completed a Report and Recommendation, and he directed it to be filed. However, the Report and Recommendation was not filed for some reason and no action was taken with respect to this case for almost a year.

    On May 10, 2010, the case and motion was reassigned to this court. This court has reviewed Judge Pepe's Report and Recommendation, which was located after his retirement, and it found his factual findings to be consistent with the record and transcripts. Similarly, this court also found Judge Pepe's conclusions of law to be accurate and it fully agrees with them. The relevant law has not changed since Judge Pepe completed his Report and Recommendation and, if this court had been referred this case originally, then it would have reached the same factual findings and conclusions of law recommended by Judge Pepe and for the same reasons put forth by Judge Pepe. Therefore, this court recommends that the District Court adopt the findings and conclusions of Judge Pepe. Magistrate Judge Pepe's Report and Recommendation is provided below.

    The parties to this action may object to and seek review of this Report and Recommendation,

1

but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan<br>
Virginia M. Morgan<br>
United States Magistrate Judge

Dated: July 1, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and James Lossia via the Court's ECF System and/or U. S. Mail on July 1, 2010.

s/Jane Johnson<br>
Case Manager to<br>
Magistrate Judge Virginia M. Morgan

# MAGISTRATE JUDGE PEPE'S
# REPORT AND RECOMMENDATION
# ON
# JAMES A. LOSSIA AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DKT. #56)

Petitioner James Lossia was convicted in the United States District Court for the Eastern District of Michigan of identity theft and access device fraud. He subsequently appealed his

conviction and sentence alleging, among other things, that the sentencing Court committed numerous errors in sentencing. The Sixth Circuit rejected Petitioner's claims and affirmed his conviction. *United States v. Lossia*, 193 Fed. Appx. 432 (6th Cir. 2006). Petitioner has now filed a timely habeas petition under 28 U.S.C. §2255 challenging his conviction and sentence, and requesting an evidentiary hearing. This matter has been referred for Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) (Dkt. #29).

On November 10, 2008, this Court granted Petitioner's request for appointment of counsel (Dkt. #51), and Margaret S. Raben filed a notice of appearance on Petitioner's behalf on January 15, 2009 (Dkt. #54). Also on November 10, 2008, this Court entered an Order requiring an evidentiary hearing for the limited purpose of determining whether Petitioner knowingly and voluntarily waived his right to be charged by indictment (Dkt. #50). The evidentiary hearing was subsequently held on February 24, 2009, at which time Petitioner was represented by Ms. Raben, and James Thomas, James Gilbert Lossia, Petitioner James Anthony Lossia and Paul Rinaldi testified (Dkt. #58).

On February 23, 2009, Ms. Raben filed an Amended Motion To Vacate Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. #56). The Court also granted the parties leave to file supplemental briefing that addressed arguments presented at the February 24, 2009, evidentiary hearing, and to present arguments regarding the relatedness of Petitioner's state convictions. Petitioner filed his supplemental brief on May 18, 2009 (Dkt. #63), and the government responded on June 8, 2009 (Dkt. #66). For the reasons stated below, it is **RECOMMENDED** that Petitioner's Amended Motion To Vacate Sentence be **DENIED**.

**I.    BACKGROUND**

The Sixth Circuit Court of Appeals provides the background to Petitioner's claim:

> On September 28, 2004, a two-count information was filed against Petitioner, alleging that Petitioner committed identify theft, in violation of 18 U.S.C. § 1028(a)(7), and access device fraud, in violation of 18 U.S.C. § 1029(a)(2). Petitioner waived indictment and thereafter entered a plea agreement with the government, whereby Petitioner agreed to a sentencing range of 77 to 96 months. As part of the plea agreement, the government also promised to move for a downward departure in exchange for substantial assistance. The sentencing judge rejected this plea agreement, however, at Petitioner's first sentencing hearing on February 25, 2005. The district court then gave Petitioner one month in which to reconsider his decision to plead guilty.
>
> After taking one month to reconsider his plea of guilty, Petitioner decided to move forward with a plea of guilty without the benefit of an accepted plea bargain. According to the Presentence Investigation Report, Petitioner's adjusted offense level was 19 and his criminal history score a 28, placing him in the highest criminal history category, Category VI. The recommended sentence was therefore 63 to 78 months of incarceration. U.S. Sentencing Guidelines Manual § 5A (2004). The district court determined that a greater sentence was called for, in large part because of Petitioner's extensive criminal history of committing the same type of crimes. In reaching its sentencing determination, the district court rejected Petitioner's objections to the Presentence Investigation Report's calculation of his criminal history score, determining that, contrary to Petitioner's contentions, certain of Petitioner's prior offenses were not "related"

3

> such that they merited fewer criminal history points. The district court therefore sentenced Petitioner to 98 months incarceration, to be followed by three years of supervised release. The maximum statutory incarceration term for Petitioner's violation of 18 U.S.C. § 1028(a)(7) is 15 years. 18 U.S.C. § 1028(b)(1). The maximum statutory incarceration term for a violation of 18 U.S.C. § 1029(a)(2) is 10 years. 18 U.S.C. § 1029(c)(1).

*Lossia*, 193 Fed. Appx. at 433.

On appeal, Petitioner argued that the district court committed numerous errors in sentencing, including an unjustifiable upward departure from the Sentencing Guidelines recommended range for his offense. The Court of Appeals affirmed his conviction and held that: (1) the district court did not clearly err in finding that defendant had not shown that his prior financial fraud offenses were related; (2) defendant failed to show that the district court demonstrated impermissible bias such that he was denied a fair sentencing; and (3) under the plain error standard, Petitioner's sentence was not unreasonable. *United States v. Lossia*, 193 Fed. Appx. at 432.

In his Amended Petition, Petitioner raises four issues:

A. He did not knowingly, intelligently or voluntarily waive his Fifth Amendment right to Indictment by grand jury.

B. Counsel were ineffective in failing to advise Petitioner of his right to Indictment, which resulted in Petitioner's unknowing and involuntary waiver of his Fifth Amendment right to Indictment.

C. Counsel was ineffective for not investigating prior convictions and obtaining state records to support the relatedness of some of Petitioner's prior convictions.

D. Counsel was ineffective at sentencing for failing to present existing evidence in mitigation.

## II. STANDARD OF REVIEW

A prisoner seeking relief under § 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact of law that was so fundamental as to render the entire proceeding invalid." *Mallett v. U.S.*, 334 F.3d 491, 496-97 (2003) (citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). Where the petitioner's motion alleges a non-constitutional error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Generally a petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *U.S. v. Frady*, 456 U.S. 152, 167-68; *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). Yet, this procedural default rule does not apply to claims of ineffective assistance of counsel. Claims of ineffective assistance of trial counsel generally are not reviewable on direct appeal because the record may be inadequate to permit review. *See, United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998); *United States v.*

4

*Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996). Consequently, such claims may be raised for the first time in a § 2255 proceeding, without regard to a failure to raise them on direct appeal. *See Tucker*, 90 F.3d at 1143; *United States v. Allison*, 59 F.3d 43, 47 (6th Cir. 1995).

The Supreme Court has established a two-prong test for determining whether counsel's performance was ineffective for Sixth Amendment purposes:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The *Strickland* test also applies to challenges of guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To demonstrate prejudice resulting from ineffective assistance of counsel in the context of plea arrangements, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. The *Strickland* court defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

When evaluating counsel's performance under the *Strickland* test, the Sixth Circuit has emphasized that "[a] reviewing court must give a highly deferential scrutiny to counsel's performance . . . ." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). This is based on the well-established principle that legal counsel is presumed competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989), *aff'd denial of post-conviction relief*, 972 F.2d 348 (6th Cir. 1992), *cert. denied*, 507 U.S. 917 (1993). As the Court in *Strickland* stressed:

> [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

*Strickland*, 466 U.S. at 689. Nonetheless, Petitioner "cannot use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to him on direct appeal." *Clemons v. United States*, 2005 WL 2416995, at *2 (E.D. Tenn. 2005) (citing, *see e.g.*, *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996).

### III. ANALYSIS OF PETITIONER'S CLAIMS
#### A. He did not knowingly and voluntarily waive his right to be charged by Indictment

Petitioner contends that he was denied his right to Indictment by grand jury due to ineffective assistance of counsel and an abuse of discretion by the Magistrate Judge for failing to

5

follow Rule 7(b) of the Federal Rules of Criminal Procedure (Dkt. #56, pp. 2-4). Petitioner contends that he was unaware of his right to be indicted and was not informed by either counsel or the Magistrate Judge.

Because Petitioner did not raise his claim regarding waiver of Indictment before the Court prior to sentencing, or on direct appeal, he has procedurally defaulted. "Where a defendant has procedurally defaulted on a claim by failing to raise it on direct review, the claim may be raised for the first time on habeas only if the defendant can first demonstrate either 'cause and actual prejudice' or that he is 'actually innocent,' " *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also, United States v. Frady*, 456 U.S. 152, 167-168 (1982) (applying the same standard to a challenge brought under 28 U.S.C. § 2255). The bar which a claimant faces is "intentionally high. . . , for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

Because Petitioner pled guilty to the charged offenses, he cannot profess actual innocence. Therefore, "he must show 'cause' excusing his double procedural default and 'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 167-168. He must satisfy both the cause and prejudice elements. Failure to satisfy both elements will necessarily defeat his claim. *See Ross v. United States*, 339 F.3d 483 (6th Cir. 2003) (finding it unnecessary to review the issue of cause where petitioner has failed to establish prejudice).

Attorney error may constitute cause if it rises to the level of constitutionally ineffective assistance of counsel. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must demonstrate that, considering all the circumstances, counsel's performance fell below the objective standard of reasonableness and so prejudiced defendant that he was denied a fair trial and a reasonable probability exists that, but for counsel's conduct, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 693 (1984). Petitioner's claim fails to pass the two-prong test of *Strickland.* He has shown neither (1) that his counsel's performance fell below an objective standard of reasonableness or that (2) but for counsel's error, there is a reasonable probability that the result of the trial would have been different.

Petitioner attempts to satisfy the cause requirement by suggesting ineffective assistance of counsel. He alleges that his attorneys failed to advise him of the distinction between Indictment and Information prior to his arraignment. Petitioner also suggests that counsel who represented him at the arraignment hearing provided ineffective assistance by allegedly not explaining the contents of Waiver of Indictment form prior to the time that Petitioner signed it.

Review of the records of the case and of the testimony presented at the evidentiary hearing, clearly establish that Petitioner has failed to show cause for his procedural default. At his arraignment, Petitioner submitted a signed Waiver of Indictment and signed Acknowledgment of Indictment, both dated October 8, 2004 (Dkt. #4 & #6). In the Waiver of Indictment, Petitioner acknowledged his right to be charged by Indictment, stating that he "waives in open court prosecution by Indictment and consents and agrees that the proceedings may be by Information." Additionally, Petitioner's attorney has provided an affidavit stating Petitioner was fully aware of his right to be charged by Indictment and that his choice to waive that right was knowingly and voluntarily made (Dkt. #38, Ex. A, p. 3).

In his Reply to his Original Petition, Petitioner indicates that although his name and alleged signature appears on the Acknowledgment of Indictment form, the form lists John Brooks as the defendant, in place of the Petitioner (Dkt. #45, p. 6). Specifically, the form states:
> I JOHN BROOKS, defendant in the above entitled cause acknowledge that I have received a copy of the Indictment/Information in the above entitled cause prior to pleading thereto. . . (Dkt. #6).

Plaintiff further claims he does not remember ever signing the form (Dkt. #45, p. 6).

Yet, Petitioner's signature is on the document above his name on the signature line along with the signature of one of his attorneys, Paul Rinaldi. Moreover, Petitioner stated in open court that he signed the Waiver of Indictment (Dkt. #27, Ex. A, p. 4). Statements made in open court carry a strong presumption of truth. *See Blackledge v. Allison*, 431 U.S. 63 (1977). Petitioner also has significant experience with the criminal justice system. At the time of sentencing, he was approximately 40 years of age, with 24 prior criminal convictions (Dkt. #49, Sentencing hearing of March 21, 2005, p. 16; Presentence Investigative Report, ¶¶ 33-117). As a consequence of his extensive involvement with the criminal justice system over an extended period of time, it is reasonable to assume that Petitioner was knowledgeable as to the significance of waiving Indictment, and proceeding by Information.

Other than his claim that he does not remember signing the Waiver of Indictment, Petitioner has not offered any evidence that would nullify his sworn statement in court. Furthermore, Petitioner contradicts his claim in his *pro se* Petition, acknowledging that he waived Indictment at the direction of counsel as a strategic move to prevent the government from bringing additional charges (Dkt. #27, p. 6). Having had the opportunity to advise the Court that he did not understand the consequences of waiving Indictment at his arraignment, his guilty plea hearing, and the two sentencing hearings, his failure to do so until now further undermines his claim.[1]

In addition to establishing cause for his procedural default, Petitioner must also show "actual prejudice." To do so, he bears the burden of establishing not merely that the alleged errors created the "possibility of prejudice," but that the errors worked to his "actual and substantial disadvantage." *Frady*, 456 U.S. at 170. The showing of prejudice which is required to overcome procedural default on collateral review "is significantly greater than that necessary" to establish plain error on direct review. *Murray v. Carrier*, 477 U.S. 478, 493-494 (1986); *Frady*, 456 U.S. at 166. Mere speculation is insufficient to warrant §2255 relief. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of a guilty plea, the resulting prejudice must amount to a showing that, but for counsel's errors, the petitioner would not have pleaded guilty but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Petitioner has not shown actual prejudice. He claims in hindsight that he would have required the grand jury to return an Indictment against him, speculating that the grand jury may not have done so. Such a claim is both hypothetical and speculative and therefore fails to meet the threshold requirement of actual prejudice. *Frady*, 456 U.S. at 170.

Furthermore, Petitioner received the benefit of his bargain with the government. During the time period between the dismissal of the Complaint and the filing of the Information, Petitioner and his attorneys were concerned as to the number and nature of charges which might be brought by the government. Additionally, Petitioner was incarcerated at the Oakland County Jail. He and his attorneys were concerned that he might not be given credit for that time in the federal case. Therefore, he wished to be charged and arraigned in federal court as soon as possible. By waiving Indictment and agreeing to proceed by Information, he was successful in limiting the number and nature of charges which were filed. He also began to receive credit in his federal case for the time which he was spending in jail. Having received a substantial benefit from his attorneys' negotiations with the government, no prejudice occurred.

---

[1] The facts leading up to Petitioner's arraignment also strongly indicate that he was fully aware that as a result of his attorneys successful negotiations with the government, he would be proceeding by Information rather than Indictment. Petitioner was aware that his attorneys had been negotiating with the government for a number of months to limit the charges which might be brought. Both James Thomas, his attorney in the federal investigation, and Paul Rinaldi, his attorney in the pending state case, had discussed proceeding by Information rather than by Indictment with their client, and believed that Lossia understood the practical differences between the two procedures.

It is also clear that even if Petitioner had satisfied the cause and actual prejudice threshold, his claim would nonetheless fail. The government can charge a defendant by Information if the defendant, after being advised on his rights and the nature of the charge, waives in open court prosecution by Indictment. Fed. R. Crim. P. 7(b). The right to be prosecuted by Indictment is a right which can be waived. *See United States v. Cotton*, 535 U.S. 625, 630 (2002) (citing Fed. R. Crim. P. 7(b)). It is sufficient for purposes of Rule 7(b) that a defendant file a written waiver of indictment in open court. *Kossin v. United States*, 235 F.2d 188, 189 (6th Cir. 1956).

A defendant waives his right to appeal constitutional violations occurring prior to a plea of guilty once the defendant enters his plea. *United States v. Kirksey*, 118 F.3d 1113, 1115 (6th Cir. 1997). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occur prior to the entry of his guilty plea. He may only attack the voluntary and intelligent character of the guilty plea." *Id.*, quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. LaLonde*, 509 F.3d 750, 757 (6th Cir. 2007). By pleading guilty, Petitioner waived claims of alleged error which occurred prior to his plea, including those relating to his waiver of Indictment.

Accordingly, it is **RECOMMENDED** that Petitioner be **DENIED** habeas relief for the first two issues presented in his Amended Petition, *i.e.*, (1) he did not knowingly, intelligently or voluntarily waive his Fifth Amendment right to Indictment by grand jury and (2) counsel were ineffective in failing to advise Petitioner of his right to Indictment, which resulted in Petitioner's unknowing and involuntary waiver of his Fifth Amendment right to Indictment.

  **B.** **The sentencing court incorrectly determined his criminal history because counsel did not present court records of prior convictions to substantiate petitioner's claim that certain prior convictions were related for purposes of computation of his criminal history**

Petitioner argues that counsel who represented him at sentencing rendered ineffective assistance by failing to obtain records to support his claim that certain prior convictions were related offenses for sentencing guideline purposes. Petitioner contends that he should have been assessed only 22 criminal history points, not 28 as determined by the Court at sentencing. He argues that even though his criminal history would have remain unchanged at category VI, it is likely that the Court would have imposed a lesser sentence (Dkt. #56, pp. 4-5).[2]

Generally, claims are deemed barred for additional review if they have been previously adjudicated before a district court or an appellate court. *See Stephan v. United States*, 496 F.2d 527, 528-559, (6th Cir. 1974), *cert. denied*, 423 U.S. 861 (1975). Once a defendant has appealed his conviction, the Courts are entitled to presume that he has been fairly and finally convicted. *Frady*, 456 U.S. at 164-165. "A defendant may not use a 2255 motion to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *see also, United States v. DeGroat*, 102 Fed. Appx. 956, 2004 WL 1532226 (6th Cir. 2004) (unpublished). Petitioner does not claim that there was a change in the law or any other highly unusual circumstance which would permit him to again bring this claim.

Moreover, Petitioner's present claim is virtually identical to that which he unsuccessfully raised at sentencing and again on direct appeal. In the Presentence Investigation Report

---

[2] Criminal history category VI applies to a defendant who is assessed 13 or more criminal history points.

("PSR"), Petitioner was assessed 28 criminal history points as a result of his previous criminal convictions. *Lossia*, 193 Fed. Appx. at 433. He challenged that determination in a sentencing memorandum (Dkt. #12), contending that certain prior convictions should have been grouped together as "related cases" for sentencing guideline purposes. He continued this argument, without success, at the sentencing hearing (Dkt. #49, p. 3-9). On direct appeal, he raised this issue once again, contending that the court erred in its determination that certain prior convictions should not be grouped as "related cases." His argument was rejected by the appellate court. *Lossia*, 193 Fed. Appx. at 434-436. Counsel's failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *See Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2003). Here, the issue concerning relatedness of convictions was raised and rejected by the Court on appeal rendering Petitioner's claim unfounded.

Furthermore, assuming *arguendo* that Petitioner could properly bring this claim yet again, it should nonetheless be denied. U.S.S.G. §4A1.2 provides that "[p]rior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of §4A1.1(a), (b),and (c)."[3] Prior sentences are not considered related if they were separated by an intervening arrest. Otherwise , prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing. U.S.S.G. §4A1.2 (Application Note 3).

Crimes are not related if they "occurred at different times, in different locations, and were committed against different victims." *United States v. Oldham*, 13 Fed.Appx. 221, 226-27 (6th Cir. 2001) (finding that a defendant's convictions for burglarizing homes within hours of each other were "unrelated"). The phrase "common scheme or plan" is one "of intention, implying that [offenses] have been jointly planned, or at least that . . . the commission of one would entail the commission of the other as well." *United States v. Irons*, 196 F.3d 634, 638 (6th Cir.1999) (quoting *United States v. Ali*, 951 F.2d 827, 828 (7th Cir. 1992), which held that separate instances of harassment committed against the same victim were not "related" because the defendant did not jointly plan the crimes).

Furthermore, crimes are not necessarily "related" because they "were committed within a short period of time." *United States v. Alford*, 436 F.3d 677, 684 (6th Cir. 2006) (holding that two robberies committed within hours of each other were not part of a "common scheme or plan" when the defendant did not originally plan to rob his second victim). Prior crimes are not considered "related" under U.S.S.G. § 4A1.2(a)(2) "merely because they are part of a crime spree." *Irons*, 196 F.3d at 638. Nor are prior crimes related "because they were committed to achieve a similar objective." *United States v. Horn*, 355 F.3d 610, 614-15 (6th Cir. 2004) (citing *United States v. Brown*, 209 F.3d 1020, 1024 (7th Cir. 2000) (holding that prior convictions are not "related" simply because the crimes used the same modus operandi, were part of a crime spree, or shared the same motive)). Petitioner bears the burden of proving that the prior offenses were part of a single common scheme or plan. *See Horn*, 355 F.3d at 614.

Prior to sentencing, in relevant part, the Probation Department scored Petitioner's criminal history as follows:

| | | | |
|---|---|---|---|
| ¶52 | 3 points | ¶76 | 3 points |
| ¶56 | 3 points | ¶80 | 0 points |
| ¶60 | 0 points | ¶84 | 0 points |
| ¶64 | 0 points | ¶88 | 3 points |
| ¶68 | 0 points | ¶92 | 3 points |
| ¶72 | 3 points | | |

---

[3] 2United States Sentencing Commission Guidelines Manual, November 1, 2004.

PSR, pp. 12-15.

Petitioner filed an objection to this scoring. Petitioner contended the convictions in Paragraphs 52, 56, 76, 88 and 92 were "related cases" within the meaning of U.S.S.G. § 4A1.2. The Probation Department's response noted that, as to Paragraphs 52, 56 and 76, "[D]efendant was charged with Illegal Sale/Use of a Financial Transaction Device." The Probation Department noted that the details regarding these offenses were not known because arrest reports, although requested, were not received. Yet, the charging documents list each of these offenses as having occurred on separate dates and they were not consolidated for sentencing. The Probation Department further noted that it had "no information to support defense's contention that these cases are related" (Addendum and Revisions to the Presentence Report dated 2/22/05).

For Paragraph 88, the Probation Department noted the offense occurred on or about July 31, 1998, and the Petitioner was arrested on October 22, 1998. Petitioner was charged with False Pretenses over $100.00, for submitting a fraudulent loan application. For Paragraph 92, the Petitioner was arrested on September 30, 1999, and charged with Financial Transaction Device. The Probation Department indicated that the convictions described in Paragraph 88 and 92 were not considered related because they involved different victims, different conduct and/or were separated by intervening arrests, and were not consolidated for sentencing (Addendum and Revisions to the Presentence Report dated 2/22/05).

The Probation Department scored 25 criminal history points plus 3 "recency" points for a total of 28 criminal history points. This scoring placed Petitioner in category VI, the category for 13 or more criminal history points. The Probation Department noted that in the event the Court should determine the aforementioned cases were related, Petitioner would have a total of 14 criminal history points, which would result in a criminal history category of VI and his guideline range would remain the same as that previously determined by the Department, 63 to 78 months.

At Petitioner's first sentencing date, Judge Zatkoff rejected the Plea Agreement because of Petitioner's extensive criminal history (Dkt. #48). Petitioner did not withdraw his guilty plea. Petitioner submitted a Supplemental Sentencing Memorandum (Dkt. #12), which argued that the cases pled on the same day in the same court and investigated by the same investigator (Paragraph 52, 56, 60, 64, 68, 72, 76, 80, 84, 88, 92) should be considered "related" and there was a "common scheme or plan" which linked them (Dkt. #12, pp. 4-5). At Petitioner's sentencing, attorney James Thomas again argued that the convictions were related because they evidenced a common scheme or plan (Dkt. #49, pp. 3-9). Judge Zatkoff rejected Mr. Thomas's argument, stating: "defendant has not shown that he jointly planned his alleged related crimes nor has he shown that the commission of any crimes entailed the commission of any of the other crimes" (*id.* at p. 5).

On appeal, Petitioner argued Judge Zatkoff erred in rejecting the relatedness claim. The Sixth Circuit stated:

> Defendant has presented no such evidence of joint planning to this court. Nor has Defendant presented evidence that the commission of one of the crimes involved the commission of the other crimes for which he was sentenced on the same day. Defendant fails to address the crimes individually and instead has relied on his general argument that the joint sentences and similar nature make the crimes part of a common scheme or plan. The district did not clearly err in refusing to find that Defendant had proven that each sentencing date encompassed "related" offenses for purpose of §4A1.2.

*Lossia*, 193 Fed. Appx. at 435-436.

In his *pro se* §2255 Motion, Petitioner averred some of his state court convictions were "jointly planned" and some of them involved other crimes that were consolidated for sentencing

10

on the same day. Petitioner asked for the appointment of counsel to obtain the state court records which support the relatedness claim (R. 27, p. 9). As part of his Amended §2255 Motion filed by counsel, Petitioner submitted an Affidavit stating that the convictions in Paragraphs 52, 56 and 76 were related under §4A1.2 as a single common scheme or plan to illegally obtain a cluster of credit cards and to use the cluster of cards in a specific pattern of activity so as to obtain the maximum monetary value of each credit card before the fraudulent activity was discovered (Dkt. #56, Ex. B).

Counsel for Petitioner now indicates she has reviewed the records of the investigations conducted by Det. Darryl Derocher of the Bloomfield Twp. Police Department, who conducted a wide-ranging investigation of activity involving credit cards illegally obtained and used in Bloomfield Township and other communities in Oakland County. Det. Derocher's investigation resulted in the identification of Petitioner as the culprit and Petitioner's arrest on October 22, 1998, on the cases which are listed in Paragraphs 52, 56, 60, 64, 68, 72 and 76. Det. Derocher's investigation resulted in Petitioner being arraigned in several Oakland County district courts. His
investigation/incident numbers were given cases assigned the felony case numbers which are listed in the PSR as follows:

| ¶52 | Incident 98-20837 | ¶68 | Incident 98-6834E |
| ¶56 | Incident 98-6834B | ¶72 | Incident 98-6834F |
| ¶60 | Incident 98-6834C | ¶76 | Incident 98-6834A |
| ¶64 | Incident 98-6834D | ¶80 | Incident 98-19131 |

The Bloomfield Township records show Petitioner was arrested on October 22, 1998, on all the above cases (Dkt. #63, Ex. A). The "dates of arrest" listed in the Presentence Report are believed to be the dates arrest warrants were requested or authorized. Thus, the convictions in Paragraphs 52-80 are not separated by an intervening arrest. Petitioner's counsel's indicates that the conviction in Paragraph 80 establishes this conviction was for an attempt to obtain an auto loan by submitting false employment information. Petitioner does not claim that this conviction or any subsequent conviction is part of the "single common scheme or plan" of Paragraphs 52-76 (Dkt. #63, p. 19). Petitioner was not assessed criminal history points for the offenses identified in paragraphs 60, 64, and 68 of the PSR. Therefore, the only offenses which are in issue are those identified in Paragraphs 52, 56, 72, and 76 of the PSR, that is, the offenses for which he was
assessed criminal history points.

A Review of the details of those crimes, as shown in the chart below, does not support petitioner's claim that they were related for the purpose of computing his criminal history.

|  | PSR #52<br>Cr. 98-163276 - FH | PSR #56<br>Cr. 98-163070 - FH | PSR #72<br>Cr. 98-163381 - FH | PSR #76<br>Cr. 98-163596 - FH |
|---|---|---|---|---|
| Date of Offense | June 3, 1998 | July 9, 1998 | July 23, 1998 | July 1, 1998 |
| Location of Offense | Madison Heights | Royal Oak | Berkeley | Bloomfield Hills |
| Victim Business | Ramchargers | Mattress Warehouse | S & G Auto Parts | Erhard BMW |
| Victim Cardholder | Richard Lockerby | Walter Kubinski | Walter Kubinski | Curtis Parham |

While all of the offenses were for credit card fraud, each was committed on a different date. Each occurred in a different city. Each involved a different victim business. Also, three

11

of the four offenses involved different victim cardholders. Furthermore, each case was charged separately, and proceeded under a separate case number. No order of consolidation was entered as to these cases.

Petitioner argues that the investigative reports received from Bloomfield Township establish that Petitioner would plan the use of a cluster of illegally obtained credit cards. The plan involved the scheduled use of the illegal cards in various ways to obtain the maximum amount of cash the card could generate. The money was obtained by direct cash withdrawals from ATMs, the purchase of goods "on order" for which Petitioner's associates paid half price in cash, the purchase of clothing which could be returned to the stores for cash, and the payment of some credit card bills with credit card checks from other accounts.

Here, Petitioner argues that "there were several single common scheme or plan episodes." (Dkt. #63, p. 20). Each one involved a different cluster of credit cards. Paragraphs 52, 56 and 76 involved one such cluster involving three victims: Lockerby (¶52), Kubinski (¶56) and Parham (¶76).[4] In addition, Petitioner asserts that the evidence of the single common scheme or plan was available to support part of Mr. Thomas's argument, and that his failure to obtain and present this evidence was objectively unreasonable as a failure to investigate mitigating evidence.

Petitioner's argument is similar to that which was rejected by the Sixth Circuit Court of Appeals in *United States v. McAdams*, 25 F.3d 370, 372 (6th Cir. 1994). In *McAdams*, the defendant pled guilty to seven offenses at the same time before the same state court judge. He was also sentenced by the same judge on the same date to concurrent sentences. In rejecting the claim that the seven convictions should be considered related cases which constituted only a single conviction for computation of criminal history points, the Court noted that the cases were not factually related, each proceeded under a separate docket number, and there was a separate entry of judgement for each case.

In *United States v. Carter*, 283 F.3d 755, 758 (6th Cir. 2002), the Court again rejected a similar claim, holding that even where the state court rendered judgements on defendant's multiple cases on the same day, with sentences to run concurrently, the cases were not related as they were charged under separate indictments, carried different case numbers, were not consolidated for sentencing, and resulted in separate yet concurrent sentences.

Furthermore, Petitioner has failed to show prejudice resulting from the sentencing Court's
computation of his criminal history. His speculation that the Court may have imposed a lesser sentence is not supported by the record of the case. The sentencing Court did not impose the 98 month sentence based simply on the mechanical computation of the applicable offense level and criminal history points. Rather, the Court looked to the nature of the offenses, the consequences to the victims, and the duration of Petitioner's criminal conduct. As the Court noted:

> [T]his defendant has been convicted of fraudulent behavior involving more than the simple theft of money. To satisfy his desires he stole personal identification to obtain credit cards in the names of no less than six law abiding victims in order to defraud credit card companies of more than $269,691. This brand of thievery, in my opinion, is far more destructive of peoples lives than simple theft. It affects their credit, their ability to purchases goods and services, and their sense of privacy and safety. The defendant was engaged in this behavior for more than ten years despite numerous previous convictions for similar conduct.

---

[4] The records for ¶52 (Lockerby) are Exhibit B to Dkt. #63. The records for ¶56 (Kubinski) are Exhibit C to Dkt. #63. The records for ¶60 (Kubinski) are Exhibit D to Dkt. #63. The records for ¶64 (Kubinski) are Exhibit E to Dkt. #63. The records for ¶68 (Kubinski) are Exhibit F to Dkt. #63. The records for ¶72 (Kubinski) are Exhibit G to Dkt. #63. The records for ¶76 (Parham) are Exhibit H to Dkt. #63.

Accordingly, the Court finds that this particularly ruinous and offensive conduct of which the defendant engaged coupled with the great likelihood that he will recidivate based on the unsuccessful nature of his previous punishments warrants a prison sentence of 98 months.

(Sentencing Hearing, 03/21/2005, at 20).

In light of the Court's reasoning at the sentencing hearing, the suggestion by the Petitioner that the Court would likely impose a lesser sentence if he were assessed 22, rather than 28, criminal history points, is unwarranted. It is therefore **RECOMMENDED** that Petitioner be **DENIED** habeas relief on this claim.

### C. Counsel was ineffective at sentencing for failing to present existing evidence in mitigation

Petitioner alleges that his counsel failed to present mitigating evidence at sentencing, specifically evidence relating to the Petitioner's mental health (Dkt. #56, p. 5).

Petitioner's claim is contradicted by the records of the case. Counsel for the Petitioner provided information regarding Petitioner's current mental health status and mental health history to the district court (Dkt. #12, pp. 8-12). In addition, the Presentence Investigation Report contained extensive information regarding Petitioner's current mental health status and mental health history (Presentence Investigative Report, ¶¶ 129-141). Moreover, this claim was previously raised by Petitioner on appeal and rejected. The appeals court found that the district court reviewed Petitioner's sentencing memorandum and any additional mention of these factors would not change anything regarding sentencing:

> Defendant attempts a procedural unreasonableness argument by asserting to this Court that the district court failed to consider Defendant's individual circumstances in imposing sentence. Although the district court did not specifically mention Defendant's personal problems, the district court did reference Defendant's sentencing memorandum, in which Defendant outlines his past personal problems which might warrant leniency. Defense counsel did not present evidence of Defendant's personal history at the sentencing hearing, despite the district court's invitation to present or discuss any factors the defense felt might be pertinent to sentencing. Defendant also objects to the district court's apparent determination that Defendant's chances for rehabilitation are slim. With 24 past criminal convictions for the same types of crimes, the district court's conclusion that Defendant was a likely recidivist was eminently reasonable.
>
> Even were the district court's consideration of the §3553 factors questionable in the instant case, Defendant has not been able to show that his sentence rises to the level of plain error. The substance of the sentence is reasonable, given Defendant's long history of similar crimes; moreover, the sentence is well within the maximum incarceration penalties of 10 and 15 years for his two crimes of conviction. Therefore, we cannot say that the sentencing hearing in this case either affected Defendant's substantial rights or has adverse implications for the integrity of the judicial system. We therefore find that the district court did not commit plain error in sentencing Defendant.

13

*Lossia*, 193 Fed. Appx. at 439. In light of the information provided to the Court in the Presentence Investigation Report, and in the Petitioner's sentencing memorandum, as well as the opportunity of the Petitioner to provide additional information at the sentencing hearing, it is clear that his attempt to reopen the sentencing hearing and present additional information is untimely, and therefore it is **RECOMMENDED** that it be **DENIED**.

**IV.     CONCLUSION AND RECOMMENDATION**

On this record it cannot be said that Petitioner's counsel was deficient, or that he was prejudiced by his performance. Accordingly, for the above stated reasons, **IT IS RECOMMENDED** that Petitioner's request for an additional evidentiary hearing and his habeas corpus request be **DENIED**.